UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor. | Case No. **08-61570-11** |
| **YELLOWSTONE DEVELOPMENT LLC**,<br><br>Plaintiff.<br><br>-vs-<br><br>**ROBERT SUMPTER**,<br><br>Defendant. | Adv No. **09-00098** |

**MEMORANDUM of DECISION**

At Butte in said District this 29th day of June, 2010.

Yellowstone Development, LLC, the Plaintiff ("YD"), filed this adversary proceeding on November 29, 2009. Robert Sumpter, the Defendant ("Sumpter"), answered and counterclaimed December 30, 2009 (Docket No. 14). YD filed an answer January 18, 2010 (Docket No. 23). Sumpter filed a motion for summary judgment April 1, 2010 (Docket No. 27), together with a brief in support of his motion for summary judgment (Docket No. 28) and a statement of uncontroverted facts (Docket No. 29). This Court denied Sumpter's motion for summary judgment for failure to comply with Mont. LBR 7056-1(a) and 9013-1(e) with leave to refile

1

(Docket No. 31). Sumpter filed an amended motion for summary judgment April 2, 2010 (Docket No. 32) without refiling his statement of uncontroverted facts or supporting brief. YD responded and filed a cross motion for summary judgment April 16, 2010 (Docket No. 34) along with a statement of genuine issues (Docket No. 35) and a statement of uncontroverted facts (Docket No. 37). Sumpter did not file a statement of genuine issues. On April 20, 2010, the parties stipulated to vacate the scheduled trial and submitted the competing motions for summary judgment to this Court for decision based on filed pleadings and briefings (Docket No. 39). The stipulation allowed each party to submit one additional brief. Sumpter filed his reply brief and response to YD's cross motion May 3, 2010 (Docket No. 41) while YD filed his reply and final brief to the cross motions for summary judgment May 17, 2010 (Docket No. 43).

The Court has reviewed the pleadings, the competing motions for summary judgment, the statements of uncontroverted facts and exhibits, the stipulation agreement, and the parties' responses. The stipulation agreement requests, "Upon the completion of the filing of these Briefs, the matter will be deemed submitted and the Court may, based on its review of the briefs and the record make appropriate findings and enter corresponding conclusions of law that resolve the competing claims presented by the Parties." In the interest of efficiency and at the parties' request for resolution to their claims, the Court is now ready to issue a decision in this proceeding.

For the reasons set forth below, the Court finds the 2004 Porsche was property of the bankruptcy estate as of the petition date.

## FACTS

Both parties filed statements of uncontroverted facts as required by Mont. LBR

7056-1(a)(1). Sumpter did not file a statement of genuine issues with YD's facts. The uncontroverted facts submitted by YD are as follows:

1. On March 11, 2009, Sumpter filed a Proof of Claim in Case No. 08-61570. Claims Register No. 533. *A copy is attached as Exhibit 1*.

2. Included with Sumpter's Proof of Claim were copies of a series of Employment Agreements and a copy of a valid Certificate of Title showing Plaintiff, Yellowstone Development LLC, as the owner of the Porsche Cayenne WP1AC29P54LA94743 (the Porsche). *Exhibit 1, Certificate of Title*.

3. The Employment Agreements reflect:

    A. Sumpter was first employed by Yellowstone Development LLC on January 1, 2007. *Exhibit 1, Employment Agreement*.
    B. Sumpter's Employment was continued by Yellowstone Development LLC, under the First Amended Employment Agreement. *Exhibit 1, First Amended Employment Agreement*.
    C. On the eve of Tim Blixseth transferring control of the employing entities to Edra Blixseth, the terms of Sumpter's employment were amended by a Second Amendment to Employment Agreement. *Exhibit 1, Second Amendment to Employment Agreement*.

4. While employed with Yellowstone Mountain Club, LLC and Yellowstone Development, LLC, Sumpter was permitted to use the Porsche as a condition of his employment. *Exhibit 1, ¶ 10.3 of the Employment Agreement.*

5. According to the Agreements, upon termination of employment, the vehicle would be transferred to Sumpter at its then current market value.[1] *Id.*

6. Sumpter's employment ended consistent with the Second Amendment to Employment Agreement dated August 8, 2008, when Edra Blixseth took control of Yellowstone Development LLC on or about August 13, 2008. *See attached Exhibit 2, Sumpter Wage Claim.*

7. Sumpter filed a wage claim with the Montana Department of Labor (Department of Labor) on or about September 24, 2008. *Id.*

8. On or about October 20, 2008, Yellowstone Development, LLC filed "Respondent's

---

[1] This stands in sharp contrast to Sumpter's statement in his Affidavit and Statement of Uncontested Facts at ¶3,"that upon termination of the employment, the vehicle would be his."

3

Answer to Wage Claim," with the Department of Labor, wherein it disputed Sumpter's wage claim for variety of reasons and stated specifically as follows:

Delivery of the title has been delayed due to change in ownership and management of the Club during the interim, but the title has now been received and will be provided for Sumpter promptly upon instruction from the DOL Compliance Specialist. However, the Club denies that Sumpter is entitled to be paid the value of the Porsche ($39,225) in addition to having ownership and uninterrupted possession and use of the car. *See Respondent's Answer to Wage Claim, Exhibit 2,* Pg. 3, ¶3.

9. Yellowstone Development LLC filed a Chapter 11 Voluntary Petition with this court on November 10, 2008 ("Petition Date"). *Docket No. 1 in Case No. 08-61571*.

10. As of the Petition Date, Yellowstone Development LLC had not received any instructions from the Department of Labor and it held a valid Certificate of Title to the Porsche reflecting ownership in its name. *Exhibit 1, Certificate of Title*.

11. At no time did Sumpter pay or Yellowstone Development LLC receive the fair market value of the Porsche.

12. On November 13, 2008, Case No. 08-61571 and Case No. 08-61570 were procedurally and administratively consolidated by Order entered in 08-61570 at Docket No. 39.[2]

13. On December 11, 2008, Sumpter filed a Notice of Appearance and Request for Notice identifying himself as a "creditor/party in interest." *Docket No. 162*.

14. On March 3, 2009, Debtors filed their Second Amended Joint Plan of Reorganization (Second Plan). *Docket No. 697*.

15. According to the terms of the Second Plan: Except as otherwise explicitly provided in this Plan, on the Effective Date, all property of the Estates, to the fullest extent of section 541 of the Bankruptcy Code, and any and all other rights and Assets of the Debtors of every kind and nature (including the Retained Actions and Avoidance Actions) shall revest in each of the Reorganized Debtors that owned such property or interest in property as of the Petition Date, free and clear of all Liens, Claims and Equity Interests, except as specifically provided for in this Plan. *Docket No. 697 § 8.1, Schedules 1.41 and 1.104*.

16. The Second Plan further provides that:

As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the

---

[2] All references to a "docket" from this point forward in the Statement refer to the Docket in Case No. 08-61570.

4

      Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, cause, transaction, state of facts, or other activity of any kind or nature that occurred prior to the Effective Date. *Docket No. 691 at §8.3.2.*

17. The Second Plan was premised on the Definitive Agreement which provided for the sale of the Debtors' equity interests to the Acquirer and expressly provided that:

    [o]n the Closing Date, the only assets of the Debtors shall be the Project which shall be subject to no Claim, Lien, obligation or liability other than the Assumed Obligations, Class 2 Allowed Claims (as and to the extent provided in the Plan) and the Class 10b Allowed Claim. *Docket No. 691 at § 2.2.*

18. The Second Plan defines "Project" as including:

    . . . . all Personal Property and those items listed in Exhibit C to Schedule 1.104. *Docket No. 691 at §1.104*; and, *Docket No. 947-11 Schedule 1.104, Exhibit C.*

19. The Porsche is clearly listed on page 42 of Schedule 1.104. *Docket No. 691-11 Schedule 1.104, Exhibit C.*

20. On May 8, 2009, Sumpter filed an objection to the Second Plan, alleging that his alleged membership interest was improperly classified under the Plan. *Docket No. 829.*

21. On May 18, 2009 the Court held a hearing and was advised that with the exception of Mr. Sumpter's objections related to treatment of his special membership, all objections to the Second Plan had been resolved. *Docket at 917.*

22. Consistent with the hearing, the Court entered an Order denying Sumpter's objection to the Plan. *Docket No. 921.*

23. On May 21, 2009, Sumpter filed a series of Motions and Affidavits requesting the Court reconsider its decision overruling his objection to confirmation of the Plan. *Docket Nos. 929-935.* The motions were denied after a hearing on June 1, 2009. *Docket Nos. 1021, 1022, and 1023.*

24. On May 22, 2009, consistent with the hearing held on May 18, 2009, Debtor filed its Third Amended Joint Plan of Reorganization (the Plan). The provisions of the Plan that related to the treatment of the Porsche remained unchanged in the Plan and are identical to the same provisions in the Second Plan. *Compare Docket No. 691 and sections cited above, Schedules 1.41 and 1.104 and the same cited sections at Docket 947 & 995, Schedules 1.41 and 1.104.*

25. On June 2, 2009, an Order confirming the Plan was entered by the Court. *Docket No.*

*1026*.

26. The Order was supported by a Memorandum of Decision in which the Court made Findings of Fact and Conclusions of Law. *Docket No. 1025*.

27. On June 9, 2009, Sumpter appealed the Confirmation Order. *Docket No. 1031*.

28. Sumpter identified four (4) issues on appeal. *Docket No. 1059.*

29. None of the issues identified by Sumpter in his appeal relate to the revesting of the Porsche, free and clear of all liens, claims and interests, with the Plaintiff. *Id*.

30. On November 29, 2009 the present action was filed by Yellowstone Development LLC. *See Docket No. 1, Case No. Adv 09-00098*.

31. On December 30, 2009, Sumpter answered the Complaint and alleged his own counterclaims asserting that he owned the Porsche. *See Docket No. 14, Case No. Adv 09-00098*.

Mont. LBR 7056-1(a)(1) requires the moving party to submit a statement of uncontroverted facts. Mont. LBR 7056-1(a)(2) requires a party opposing the motion for summary judgment to file a "separate, short, and concise 'Statement of Genuine Issues,' setting forth the specific facts, which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment in favor of the moving party . . . together with an opposition brief." Mont. LBR 7056-1(a)(3) provides "[a]ll material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party." Sumpter did not file a statement of genuine issues or otherwise assert any disputed facts. The uncontroverted facts stated by YD are deemed admitted pursuant to Mont. LBR 7056-1(a)(3).

## BACKGROUND

Yellowstone Development LLC and Yellowstone Mountain Club, LLC (collectively the

"Club") employed Sumpter on January 1, 2007. An Employment Agreement covered the terms of Sumpter's employment. The parties amended the Employment Agreement twice. The first amendment executed on April 14, 2008, extended the term of Sumpter's employment. The second amendment executed August 8, 2008, eliminated the Employment Agreement's non-competition clause and modified the agreement's termination language. Neither amendment addressed any provision concerning the vehicle at issue.

The Employment Agreement allowed Sumpter use of a Club vehicle: a 2004 Porsche; for work and personal purposes during his employment. The Employment Agreement indicates "Vehicle shall be owned by Club at all times while used by Sumpter. Club reserves the right to demand return of the vehicle prior to end of Sumpter's employment." On termination of Sumpter's employment, the Employment Agreement required the Club to "transfer the vehicle to Sumpter at its then current value." Sumpter's employment terminated on August 13, 2008, in compliance with the Second Amendment to Employment Agreement. Sumpter has had possession of the Porsche since his employment began.

Sumpter filed a wage claim with the Montana Department of Labor September 24, 2008, for unpaid wages and the Porsche. YD's October 17, 2008, response to Sumpter's wage claim included the following statement:

> Sumpter was entitled to the use of the vehicle during his employment and that upon termination, the vehicle would be transferred to him at its then current value. That was done. Upon termination of Sumpter's employment . . . Sumpter retained possession and use of the Porsche while title to the car was requested from the Club's offices in California. Delivery of the title has been delayed due to a change in ownership and management of the Club during the interim, but the title has now been received . . . and will be provided for Sumpter promptly upon instruction from the DOL Compliance Specialist.

7

Yellowstone Mountain Club, LLC (YMC) filed a Chapter 11 Voluntary Petition with this Court November 10, 2008. Sumpter identified himself as a creditor on December 11, 2008, and filed a Proof of Claim on March 9, 2009, for wages and the Porsche's title. Sumpter objected to debtor's Plan of Reorganization ("Plan") alleging improper classification of his membership interest. The Court denied Sumpter's objection. This Court confirmed debtor's Plan on June 2, 2009.

Disputes between YMC and Sumpter were abundant during the bankruptcy proceeding and still continue postconfirmation. At the core of the current adversary proceeding is ownership of the Porsche. Sumpter has physical possession of the Porsche while Yellowstone Development holds the Porsche's title.

## SUMMARY JUDGMENT

Summary judgment is governed by FED.R.BANKR.P. 7056. Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

If the *moving* party will bear the burden of persuasion at trial, that party must

8

> support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); Fed. R. Civ. P. 56(e)*. See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Moreover, "[a] party opposing summary judgment may not

simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

**DISCUSSION**

Based upon the foregoing facts, YD contends the Porsche is property of the bankruptcy

estate as of the Petition Date, November 10, 2008, and seeks turnover of the Porsche. In opposition, Sumpter asserts the Porsche's ownership transferred from YD to Sumpter on termination of Sumpter's employment under the terms of the prepetition Employment Agreement.

This Court has jurisdiction over property of the estate. Thus, the first issue this Court must decide is whether the Porsche is property of the estate. Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. (emphasis added).

The above definition refers to "legal" and "equitable" in the disjunctive and thus, property in which the debtor has an equitable interest is included as property of the estate under § 541(a). In discussing the broad definition of "property of the estate", this Court wrote:

> Section 541(a)(1) of the Bankruptcy Code is intended to include in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140-41 (9th Cir. BAP 1995). In *Campbell* the BAP wrote:
>
>> The legislative history indicates that the scope of § 541(a)(1) is broad. *See United States v. Whiting Pools, Inc.*, 468 U.S. 198, 205 (1983). Section 541(a)(1) is intended to include in the estate any property made available to the estate by any other provisions of the Bankruptcy Code. *Id.* (*citing* H.R. Rep. No. 95-595, p. 367 (1977)). Several provisions in the Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. *See, e.g.,* 11 U.S.C. §§ 543, 544, 547 & 548; *Whiting Pools,* 462 U.S. at 205. Thus, "[a]n estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S.

11

305, 308 (1991).

*In re Weatherwax*, 16 Mont. BR 304, 308-09 (Bankr. D. Mont. 1997).

Based upon the foregoing discussion, the Porsche may be property of YMC's Chapter 11 bankruptcy estate despite Sumpter's possession of the Porsche. However, the Court must first examine state law as:

> [S]tate law determines the extent of [a party's] interests [in property] and when these interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986). "State law, however, must be applied in a manner consistent with federal bankruptcy law." *In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (9th Cir. BAP 1989) (*citing In re North Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985), *amended,* 774 F.2d 1390 (9th Cir. 1985), *cert. denied sub nom. Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083 (1986)).
>
> 14 Mont. B.R. at 141-42.
>
> Furthermore, "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interest subject to such conditions." *In re Kleffner*, 14 Mont. B.R. 10, 15 (Bankr. Mont. 1994) (quoting *In re Baquet*, 61 B.R. 495, 497-98 (Bankr. Mont. 1986)).

*In re Weatherwax*, 16 Mont. B.R. at 308-09. *See also Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992).").

Historically, the rebuttable presumption in Montana was the person appearing on the public record as the vehicle's registrant was deemed the vehicle's owner. See MONT. CODE ANN. ("MCA") § 61-3-105 (repealed 2003). The legislature repealed the provision and eliminated the

statutory presumption, however; no court has overruled the presumption.  Regarding ownership of motor vehicles and the extent of a party's interest therein, Montana motor vehicle law recognizes equitable interest in motor vehicles in limited instances:

> "Owner" means a person who holds the legal title to a vehicle. If a vehicle is the subject of an agreement for the conditional sale of the vehicle with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee, or in the event a vehicle is subject to a lease, contract, or other legal arrangement vesting right of possession or control, for security or otherwise, or in the event a mortgagor of a vehicle is entitled to possession, then the owner is the person in whom is vested the right of possession or control.

MCA § 61-1-101(46) (2009).

In Montana, holding title to a vehicle does not provide conclusive evidence of ownership and strict adherence with certificate of title statutes is not required for vehicle ownership to change ownership.  Absent a statutorily proscribed title transfer creating legal ownership, common law requires determination of equitable ownership by a facts and circumstances test.

### Equitable Ownership

A claimant must establish two elements to prove equitable ownership.  First, the vehicle must be the subject of an arrangement concerning the vehicle.  Second, the claimant must possess the vehicle after an intentional ownership transfer.  *Safeco Ins. Co. v. Lapp,* 215 Mont. 196, 695 P.2d 1310 (1985); *In re Towe,* 225 Mont. BR 492 (Bankr. D. Mont. 1997).

The first component of equitable ownership requires a conditional sales agreement, a lease, contract, or other legal arrangement concerning the vehicle, or a mortgagor entitled to possession.  MCA § 61-1-101(46); *Richardson v. Becker* (*In re Anderson*), 19 Mont. B.R. 404 (Bankr. D. Mont. 2001).  Absent an arrangement, the vehicle's possessor is not the equitable

13

owner when another party holds legal title. *Anderson,* 19 Mont. BR at 409-09. In *Anderson*, the debtor held legal title to a motorcycle. A third party claimant possessed the motorcycle, had sole use and control, and paid all licensing and insurance expenses. Finding no agreement between debtor and possessor concerning the motorcycle and that no mortgagor was entitled to the motorcycle's possession, this Court held the possessor's equitable ownership claim without merit and found the motorcycle's legal title holder the owner.

Here, the Porsche is subject to an arrangement. Unlike the motorcycle in *Anderson* where no arrangement existed between the title holder and possessor, the Porsche is the subject of an arrangement between Sumpter and YD, the Employment Agreement. Existence of an arrangement concerning the Porsche allows the equitable ownership analysis to proceed to the second element, possession after an intentional ownership transfer.

The second component of equitable ownership requires the claimant to possess the vehicle after an intentional transfer of ownership. *Towe,* 225 Mont. BR at 497; *Lapp*, 215 Mont. at 199-200. In *Towe,* possession of an antique vehicle transferred from the title holder to an auto museum. Title remained with transferor. The parties disputed the facts, however; this Court found evidence establishing an intentional sale. Reasoning the title holder intended a sale on transfer of possession to the museum, this Court held transferor's retention of title irrelevant and deemed the vehicle's possessor, the auto museum, the equitable owner.

Similarly, in *Lapp*, an automobile dealer delivered a vehicle to purchaser under a completed sales contract. Both parties intended a sale. Title did not pass to purchaser; dealer did not complete all necessary statutory requirements to transfer title. Noting purchaser's right to use or dispose of the automobile as he wished and dealer's relinquishment of all legal rights

to the vehicle on sale, the Montana Supreme Court held ownership transferred to the purchaser on delivery despite title remaining with the dealer.

Sumpter possessed the Porsche due to an arrangement granting him permissive use, not from an intentional transfer of ownership. Unlike the purchaser in *Lapp* and the auto museum in *Towe*, where possession resulted from intentional ownership transfers after sales, Sumpter's possession of the Porsche resulted from the Employment Agreement granting him permissive use during his employment. YD granted Sumpter "use of a Club vehicle for both work and personal use." The Employment Agreement allowed Sumpter to possess the Porsche while YD retained ownership. "Vehicle shall be owned by Club at all times while used by Sumpter." YD also retained other indicia of ownership in the Employment Agreement including payment of vehicle expenses and the right to demand that Sumpter return the vehicle for any misconduct involving the Porsche.

The Employment Agreement addresses an intended ownership transfer ambiguously. The Employment Agreement provides: "Upon termination, Club will transfer the vehicle to Sumpter at its then current value." This could be read to mean that Sumpter was to pay YMC the Porsche's fair market value before YMC would transfer the Porsche. Alternatively, the provision could be read to mean that YMC would transfer the Porsche, but Sumpter would recognize the Porsche's fair market value as income. Completing either alternative would indicate an intentional ownership transfer. However, Sumpter failed to counter YD's statement of undisputed facts indicating that Sumpter neither paid YD the Porsche's fair market value nor recognized the Porsche's fair market value as income. Absent a factual showing that he either paid YD for the Porsche or, alternatively, that he claimed the Porsche's value as income,

Sumpter fails to show an intended transfer of ownership.

Sumpter relies on *Lapp* and *Towe* for the proposition that possession alone is determinative of ownership, ignoring the intentional ownership transfer component. While Sumpter satisfies the possession component he does not satisfy the second component. The Court finds Sumpter's possession of the Porsche is not incident to an intended ownership transfer. Therefore, Sumpter is not the Porsche's owner under an equitable ownership theory.

### Legal Ownership

Since the Court finds Sumpter's possession of the Porsche is not incident to an intended transfer of ownership under an equitable ownership theory, the Court looks for compliance with statutory vehicle transfer provisions under a legal ownership theory. "Upon termination, Club *will transfer the vehicle* to Sumpter at its then current value." (emphasis added). Statutory provisions establish methods for transferring vehicle ownership:

> Upon the voluntary *transfer* of any interest in a motor vehicle . . . for which a certificate of title was issued . . the owner whose interest is to be transferred shall:
>
>> (a) authorize, in writing and on a form prescribed by the department . . . to enter the transfer of the owner's interest in the motor vehicle . . . to the transferee on the electronic record of title . . . or
>> (b) execute a transfer in the appropriate space provided on the certificate of title issued to the owner and deliver the assigned certificate of title to:
>>> (i) the transferee at the time of delivery of the motor vehicle . . . or
>>> (ii) the department . . . if an application for a certificate of title has been completed by the transferee and accompanies the assigned certificate of title.

MCA § 61-3-220 (2009) (emphasis added).

No facts indicate YD complied with statutory requirements to transfer the Porsche's ownership to Sumpter. The Porsche's certificate of title reflects YD as owner. YD did not

authorize in writing on a form prescribed by the Department of Motor Vehicles a transfer of YD's interest to Sumpter. YD also did not execute a transfer to Sumpter on the Porsche's title.

Sumpter argues YD submitted written documentation to Montana's Department of Labor and Industry acknowledging Sumpter as the Porsche's owner. The writing regarding Sumpter's wage claim is insufficient to transfer vehicle ownership. The writing does not comply with the statutory requirements outlined above. The writing was not on a form authorized and prescribed by the Department of Motor Vehicles.

Absent a finding of equitable ownership and absent compliance with statutory requirements transferring vehicle ownership, the Court finds ownership vested in the owner reflected on the Porsche's certificate of title, Yellowstone Development LLC. In accordance with the foregoing the Court will enter a separate judgment as follows:

IT IS ORDERED and ADJUDGED that Judgment is entered in favor of Plaintiff, Yellowstone Development LLC, and against Defendant, Robert Sumpter; the 2004 Porsche titled to Yellowstone Development is property of Yellowstone Development; and Robert Sumpter is directed to deliver possession of the Porsche to Yellowstone Development LLC within 30 days of the date of this Memorandum.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana